UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:07CV78-J

WILLIAM EUGENE LANHAM                                                PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                      DEFENDANT

**MEMORANDUM OPINION**

Before the Court is claimant William Eugene Lanham's Complaint seeking judicial review of the unfavorable decision rendered by the defendant Commissioner denying his claim for Disability Income Benefits. After examining the administrative record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision is supported by substantial evidence and must be upheld.

PROCEDURAL HISTORY

Plaintiff filed an application for benefits on February 22, 2005 alleging that he became disabled on October 30, 1995, at age 40 from a back injury and ulcerative colitis (Tr. 71). He worked in the past as an iron worker from 1978 to 1995 (Tr. 72). He has a high school education (Tr. 78). Claimant's insured status expired on December 31, 2000, so the issue is whether he established disability on or before the date last insured. Following a hearing on July 7, 2006 at which plaintiff, plaintiff's wife, and a vocational expert offered testimony, Administrative Law Judge James E. Craig ("ALJ") found that the claimant has a severe impairment of injury to the back with residual pain and limitation that prevents him from returning to his previous work. However, the ALJ found that he remains capable of performing work, stating:

>After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a range of sedentary work activity. The claimant could stand and/or walk a combined total of two hours per day, and sit for six hours per day, as long as he had the option to alternate between sitting and standing at will. The claimant could lift 10 pounds occasionally and lesser weights frequently, but no above-the-shoulder lifting. The claimant could not perform any repetitive pushing/pulling with the upper and lower extremities. He could not perform any prolonged extension of the arms in front of his body. He could up to occasionally stoop, but never kneel, crouch or crawl. He could never be exposed to extreme cold, heat, wetness/humidity, moving/mechanical parts, electrical shock or exposed heights. Due to his level of pain and/or medication side effects, he could not carry out detailed instructions or make complex instructions. He was limited to occasional interaction with co-workers and the general public.

Plaintiff appeals from this unfavorable decision.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by an error of law, and to determine whether substantial evidence supports the decision of the Commissioner, 42 U.S.C. §405(g); Elam ex. Rel. Golay, v. Commissioner, 348 F.3d 124, 125 (6th Cir. 2003). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981); Jones v. Secretary of HHS, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the court even thought the record might support a contrary conclusion, Smith v. Secretary of HHS, 893 F.2d

106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts," Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

Plaintiff argues that the ALJ committed the following errors: 1) the ALJ erred in rejecting the disabling opinions of Dr. Suki Kim, the claimant's current treating physician, and instead selected only portions of Dr. Oexmann's opinions to support his RFC findings; and 2) the ALJ erred in finding the claimant's complaints of pain were not entirely credible. This case was denied at the fifth and final step of the sequential evaluation process, with a vocational expert testifying at the hearing.

## HISTORICAL BACKGROUND

Mr. Lanham suffered a work-related injury to his back in October of 1995 when he fell from scaffolding and landed on his back. He suffered a compression fracture at the L3 lip, and fractures of the left L2, L3, and L4 transverse processes. These were non-surgical fractures to his lumbar spine which were treated with a thoracic lumbar brace and physical therapy. His treating neurosurgeon from the time of injury on October 30, 1995 through November 22, 1999 was Dr. James Oexmann. Mr. Lanham's workers' compensation case was litigated and resulted in a 25% whole body impairment determination, not a total disability award. In the workers' compensation litigation, Dr. Oexmann's deposition was taken and is part of the administrative record before this Court.

## TREATING NEUROSURGEON DR. OEXMANN'S OPINIONS

Dr. Oexmann's records and deposition testimony provide extensive insight into the nature of the claimant's condition immediately following his work injury and the four years that followed. Within months of the claimant's back injury, Dr. Oexmann noted that he expected the claimant "to do very well and get back to work although he may have some chronic aches and pains in his back" (Tr. 239). About a year after the injury, Dr. Oexmann opined that he expected the claimant would "eventually get back to full and non-restricted activities," that physical therapy was helpful, that claimant was feeling better, and was expected to "make a full and complete recovery." (Tr. 237-238) Dr. Oexmann also commented on several objective medical findings noting that the fracture appeared stable and on myelogram looked "great," and that a CT scan showed the fracture to have "healed very well" and "should be as strong as it ever was" (Tr. 237, 234).

In November of 1996 Dr. Oexmann referred the claimant to a functional capacity evaluation (FCE) to determine whether he could return to his work as an iron worker. The FCE results indicate he is able to perform light activity. Dr. Oexmann continued to treat claimant conservatively without surgical intervention or prescription pain medications. Home exercises and physical therapy were noted to be very helpful. Dr. Oexmann also referred the claimant for a second opinion with Dr. Tibbs in the neurosurgical department at the University of Kentucky. Dr. Tibbs found excellent muscle strength, negative straight leg raise, and recommended continued conservative treatment (Tr. 420-421).

Dr. Oexmann opined that the claimant would be capable of returning to light or sedentary work (TR 235, TR 441). On the January 15, 1997 Vocational Rehabilitation Form (TR 235) Dr. Oexmann opines that claimant should stand no longer than one hour at a time, can sit with breaks

every two hours for a period of 2 hours at a time (deposition testimony at TR 447 indicates that this restriction is two hours "at a time"), can walk with no restrictions, and can lift 25 pounds occasionally and ten pounds frequently. He indicates some reaching restrictions and pushing/pulling restrictions, as well as postural limitations of no bending and stooping.

Dr. Oexmann continued to follow claimant until he left the practice, and claimant's last examination by Dr. Oexmann was on November 22, 1999 wherein he indicated the claimant was "doing great." Thereafter, claimant was seen in the same office by Dr. William Madauss on May 22, 2000 who found he was "doing fine" with his back but had some left leg numbness. Dr. Madauss then released him from neurosurgical follow-up. Based upon the opinions of these treating neurosurgeons, a state agency medical consultant opined that the claimant could perform light work before his disability insured status expired on December 31, 2000 (TR 317-24).

## TREATING PHYSICIAN DR. SUK KI KIM'S OPINIONS

Dr. Kim is claimant's new pain management physician who has provided disabling opinions on behalf of the claimant. It is noteworthy that Dr. Kim first examined the claimant on July 7, 2005, some five years past the date last insured and almost ten years after the work-related injury. Dr. Kim has rendered opinions that indicate the claimant became disabled "prior to October 1995 and he has been disabled since that time." (TR 389) On a Chronic Pain Syndrome Medical Assessment Form, Dr. Kim notes that claimant needs to alternate between sitting and standing every 30 minutes, and cannot stand, sit and walk for more than two hours total during an eight-hour workday. Dr. Kim placed lifting restrictions of rarely lifting 10 pounds, would require more than ten unscheduled breaks for rest during an eight hour work day, and would have to rest for 10 to 20 minutes before returning to work.

ANALYSIS

Plaintiff's first two arguments regarding the supportability of the ALJ's residual functional capacity findings and the rejection of Dr. Kim's disabling opinions involve application of what is commonly known as the treating physician rule. The courts have long held that the treating physician – especially one who has seen the patient over a period of time -- is in a unique position to evaluate the functional impact of an impairment on her or his patient, and the law recognizes the importance of that point of view by according deference to the opinions of treating physicians. In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court again confirmed the weight ordinarily due the opinion of a treating physician. Wilson also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also Soc.Sec.Rul. 96-2p.

A treating physician's opinion, if uncontradicted, should be given complete deference. See, e.g., Walker v. Secretary of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir.1992). A treating physician's opinion is entitled to controlling weight if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. S 404.1527(d)(2)(1999). In other words, the opinion of a treating physician need not be given *controlling* weight unless supported by clinical or diagnostic findings. See Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir.1997); Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir.1993); Kirk v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). However, "in all cases there remains

6

a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference," even if that opinion does not qualify for *controlling* weight. Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).

In this case, the ALJ accepted the opinions of Dr. Oexmann and rejected the disabling opinions of Dr. Kim in determining the claimant's residual functional capacity, but with some departures in favor of the claimant:

> The evidence shows that, prior to the date his insured status expired, the claimant lacked the residual functional capacity to perform any strenuous, heavy type work, such as the type of work he performed in the past, but he achieved good healing and remained with a residual functional capacity to perform lighter types of jobs. The claimant's history of prescribed treatment and response to treatment is not consistent with a debilitating condition prior to December 31, 2000. While the claimant seems to have the "mindset" he is disabled because he cannot perform the type of work he performed in the past, the evidence supports a finding he is capable of performing lighter exertional types of jobs. Although the claimant ultimately did not pursue vocational training, his intent shows he felt he could have performed at least some type of work during the time period he alleges he was disabled.
>
> Dr. Oexmann, his long-time treating neurosurgeon, agreed with the FCE results and opined that, prior to the date his insured status expired, he was capable of performing a range of light exertional work activity, with heavy lifting and no prolonged postural positions (Exhibit 13F). The results of an FCE and vocational evaluation demonstrate the claimant was capable of performing light exertional work activity, with no prolonged sitting, standing and/or walking (Exhibits 9F, 11F, and 14F). The Administrative Law Judge carefully considered the conclusionary opinion of "disability" offered by S. Kim, M.D., the claimant's current treating source. However, given the fact Dr. Kim first treated the claimant in 2005, about 10 years after his injury and about five years after his insured status expired, his opinion is of no adjudicatory value and is not persuasive. Dr. Kim's opinion is inconsistent with the more persuasive evidence prior to December 31, 2000, and inconsistent with what the claimant demonstrated, as well as, the opinion of his treating source at that time. Accordingly, that opinion is afforded no weight and is not persuasive. The Administrative Law Judge carefully considered the opinions of the non-examining state agency program physicians (Exhibit 6F). However, the more persuasive evidence supports a finding the claimant was not able to perform prolonged standing and walking, due to exacerbation of back and hip pain and onset of leg numbness. Accordingly, those opinions are not persuasive.

> After careful consideration of all the evidence the Administrative Law Judge finds that, prior to the date the claimant's insured status expired, he more reasonably was limited to sedentary work, with no lifting over 10 pounds, and with the opinion to alternate between sitting and standing throughout the workday. Sedentary work does not involve prolonged standing/walking, so this finding is consistent with the claimant's complaints prior to December 31, 2000, the date his insured status expired. (TR 18)

Residual functional capacity is an assessment of a claimant's remaining capacity for work once his or her limitations have been taken into account, Howard v. Commissioner, 276 F.3d 235, 239 (6th Cir. 2002); 20 C.F.R. §404.1545(a)(1). Residual functional capacity is what a claimant can still do on a sustained, regular, and continuing basis, Cohen v. Secretary of HHS, 964 F.2d 524 (1992). A claimant bears the burden or proof in establishing his or her residual functional capacity, Her v. Commissioner, 203 F.3d 388, 391-392 (6th Cir. 1999).

In this instance, the ALJ based his RFC findings upon the assessed limitations from Dr. Oexmann, with exceptions including a sit/stand option and greater lifting limitations to account for claimant's back and hip pain, as well as leg numbness. The vocational expert identified sedentary level jobs that would be available to claimant. The Court finds that the ALJ's RFC findings are supported by substantial evidence and are entitled to this Court's deference. Additionally, the Court finds that the ALJ's treatment of the treating physician's opinions comports with applicable law, and that the ALJ stated good reasons for adopting those findings, with the few modifications as noted.

The claimant also argues that the ALJ's credibility findings were legally insufficient, as the ALJ improperly rejected his complaints of disabling pain without setting forth good reasons. Specifically, he contends that the ALJ erred as he "did not really provide any reason" for rejecting the claimant's complaints of disabling pain, and the ALJ should have found him credible based upon his good work history per Rivera v. Schweiker, 717 F.2d 719, 925 (2d Cir. 1983).

> SSR 96-7p provides instruction on credibility evaluation as follows:
>
> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

20 C.F.R. § 404.1529(c) describes the kinds of evidence, including the factors below, that the adjudicator is to consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1) Your daily activities;

2) The location, duration, frequency, and intensity of your pain or other symptoms;

3) Precipitating and aggravating factors;

4) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

5) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

6) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

7) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

In his Decision, and consistent with both SSR 96-7p and the above-listed factors from 20 C.F.R. § 404.1529(c), the ALJ determined that the plaintiff's complaints were less than entirely

9

credible. In addition to being inconsistent with Dr. Oexmann's opinions, the ALJ noted that the claimant's history indicated a good response to treatment. He has the mindset that he is disabled because he cannot return to his previous work, but that he at one point intended to pursue vocational training for another type of work. (TR 18) Furthermore, the ALJ was not obligated to consider the claimant credible simply because he had a strong work history as claimant argues. As noted above, the ALJ did find some merit to his physical limitations and accounted for them in the RFC findings. In sum, the ALJ's credibility determinations are supported by substantial evidence and are entitled to deference by this Court.

A significant consideration in the evaluation of pain is the credibility of the claimant, given that tolerance of pain is very much an individual matter, Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other, Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). In other words, discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence, Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997). While plaintiff disagrees with the ALJ's rejection of his credibility, it is nonetheless clear that the ALJ stated sufficient reasons for his credibility determinations, particularly with regard to the inconsistency of his subjective complaints and the opinions of his treating physician Dr. Oexmann. Accordingly, the Court declines to disturb the ALJ's credibility findings.

## CONCLUSION

The ALJ's decision is supported by substantial evidence and will not be disturbed by this Court. A Judgment in conformity with this Memorandum Opinion has this day entered.